OPINION OF THE COURT
Chief Judge Cooke.
In this action, plaintiff seeks to recover a $52,500 down payment on certain real property, together with the reasonable costs of a title search. Defendant counterclaims for specific performance of the real property contract. Initially, Special Term had granted summary judgment to plaintiff, but the Appellate Division found that a question of fact precluded such relief and reversed (48 AD2d 922). After trial, Supreme Court ruled in favor of plaintiff and dismissed the counterclaim. On a second appeal, the Appellate Division again reversed, dismissed plaintiffs action and remitted for trial of the counterclaim. Subsequently, the Appellate Division granted leave to appeal to our court and certified the following question for review: "Was the order of this court dated May 29, 1978 properly made?”
The issue which we are called upon to review is whether defendant sufficiently complied with a contractual provision requiring him to furnish a recordable mortgage "estoppel certificate” to establish the outstanding balance of a mortgage encumbering the subject real property.
*564 There should be a reversal. Where a search of the title reveals an undischarged mortgage, a buyer is entitled to compliance with a contract provision requiring the seller to produce a certificate, in recordable form, demonstrating the outstanding balance of the mortgage accompanied by other pertinent information. Absent such certificate or tender of an acceptable substitute, the vendee cannot be forced to close title to the property. Only in such fashion may the vendee be assured of receiving the title detailed in the contract, freed of the spectre of future litigation.
Oliver Grace, the. plaintiff, entered into a contract with defendant Nappa to purchase certain real property. Upon execution, plaintiff paid defendant $52,500 with $333,981.50 payable on closing. Additionally, plaintiff was to take the premises subject to a mortgage in the amount of $138,518.49. The contract obligated defendant to produce a certificate "executed and acknowledged by the holder of such mortgage and in form for recording, certifying as to the amount of the unpaid principal and interest thereon, date of maturity thereof and rate of interest thereon”. The parties chose specifically to make time "of the essence as against both the Seller and Purchaser”.
Having failed to obtain the estoppel certificate by law day, defendant attempted to prove the outstanding balance of the mortgage by producing canceled checks and an amortization schedule. To explain his failure to procure the certificate, defendant also produced a letter from the mortgagee which indicated, among other things, that the latter did not personally consider the mortgage to be "in good standing”. Not satisfied with the substitute, plaintiff steadfastly refused to accept anything other than the estoppel statement and refused defendant’s requests for an adjournment of closing. At the meeting set for closing, according to defendant’s attorney, his client offered to satisfy the existing mortgage on the parcel and take back a purchase-money mortgage on the same terms. Defendant did not actually pay off the outstanding mortgage and deliver or record a satisfaction piece, nor did he tender a purchase-money mortgage and demand that plaintiff accept a conveyance. As another alternative, defendant suggested placing a sum of money in escrow, but no tender of performance was made. Other alternatives were discussed, none of which met with plaintiff’s approval and finally the closing was aborted.
*565 Later that same day, defendant’s attorney contacted plaintiffs attorney suggesting yet another proposal which again did not satisfy plaintiff. Plaintiff informed defendant that he considered the matter ended, and indicated his desire to renegotiate the contract. When defendant refused to return the down payment, this action emerged.
Following trial, Supreme Court found for plaintiff, reasoning that defendant had not complied with the estoppel certificate requirement, and had proposed no substitute performance which could have been completed on law day. On reversal, the Appellate Division held that a “reasonable purchaser” would have accepted the canceled checks and amortization schedule as adequate evidence of the mortgage balance. It further held that there was no proof that defendant’s proposals could not be implemented on the date of closing, and concluded that plaintiff was bound “to accept adequate proof of the balance of the mortgage, since he was buying real property, not an estoppel certificate”.
Generally, parties to the sale of real property, like signatories of any agreement, are free to tailor their contract to meet their particular needs and to include or exclude those provisions which they choose. Absent some indicia of fraud or other circumstances warranting equitable intervention, it is the duty of a court to enforce rather than reform the bargain struck (see, e.g., Laba v Carey, 29 NY2d 302, 308; Abrams v Thompson, 251 NY 79, 86). It is this fundamental principle which controls our disposition of the present case.
When a provision that time is to be of the essence is inserted in a real property contract, the date established as the law day takes on especial significance. Ordinarily, the law will allow the vendor and vendee a reasonable time to perform their respective obligations, regardless of whether they specify a particular date for the closing of title (see, e.g., Cohen v Kranz, 12 NY2d 242; Taylor v Goelet, 208 NY 253). When there is a declaration that time is of the essence, however, each party must tender performance on law day unless the time for performance is extended by mutual agreement (see, e.g., Rhodes v Astro-Pac, Inc., 41 NY2d 919, affg 51 AD2d 656; Kotcher v Edelblute, 250 NY 178, 184; Kaplan v Schemer, 1 AD2d 329, 330). In the instant case, therefore, plaintiff was well within his rights when he refused to consent to an adjournment of the closing and instead insisted upon immediate performance of defendant’s obligations. Once the *566 closing was aborted, moreover, it was not necessary for plaintiff to entertain further proposals from defendant, for if defendant had failed to satisfy a material element of the contract, he was already in default (see Isse Realty Corp. v Trona Realty Corp., 17 NY2d 763, affg 24 AD2d 1000).
Without doubt, defendant did not comply with the contract insofar as it required a particularized mortgage estoppel instrument. In our opinion, this constituted a material breach of the contract, giving rise to a right of rescission on the part of the purchaser (see, generally, Wates v Crandall, 2 AD2d 715; McAndrew v Lanphear, 280 App Div 6). The importance of the estoppel certificate, and the materiality of defendant’s breach, is aptly illustrated by the decision in Oppenheimer v Humphreys (125 NY 733, affg 9 NYS 840). There, the search revealed a mortgage on the property in the principal sum of $22,000, with interest at 7%. By contrast, the contract identified the debt as $16,000, at 5% interest. At the time set for the passing of title, the vendee declined to close without an estoppel letter, citing the discrepancy between the contract and recorded mortgage. In an attempt to resolve the impasse, the vendors proposed various alternatives, including an offer to satisfy the outstanding mortgage and take back a purchase-money mortgage, all of which the purchaser rejected.
Although not expressly required by the contract of sale, the lower court held that the vendee was entitled to a recordable estoppel certificate: "He was entitled to demand, if the mortgage had been reduced to the extent claimed, such evidence of the fact as would enable him to spread the same upon the record, so that * * * the records would show precisely the extent to which the mortgage was a lien, and it does not seem that anything less than this would satisfy the requirements of the law” (9 NYS, at p 841, supra). Without such a certificate, the court stated, the purchaser would not possess clear record title and would run the risk of future litigation as to the amount of the mortgage. On appeal, this court affirmed on the opinion below (125 NY 733, 734, supra).
In light of Oppenheimer, it can hardly be said that a specific provision entitling the vendee to an estoppel certificate is not a material term of the contract. Indeed, the soundness of this conclusion is underscored by the circumstances of the instant case. At the closing, defendant produced a letter in which the mortgagee, his hostility to the vendor thinly veiled, stated *567 that he did not consider the mortgage in good standing. From this plaintiff could have anticipated, quite reasonably, that litigation with respect to the mortgage would ensue. To compel a buyer to accept a conveyance in such a situation would be tantamount to forcing him to purchase a lawsuit. Our law wisely holds that a "vendee has the right to a title that will enable him to hold his land in peace, and to be reasonably sure that no flaw or doubt will arise to affect its marketable quality and value” (Acme Realty Co. v Schinasi, 215 NY 495, 506). So long as a reasonable likelihood of litigation exists, the buyer is not required to consummate the transaction (see, e.g., Regan v Lanze, 40 NY2d 475; Laba v Carey, 29 NY2d 302, supra; Brokaw v Duffy, 165 NY 391). Obviously, the requirement of an estoppel certificate took on an essential character in this case.
Defendant’s failure to provide the certificate was thus a material breach of the contract, excusing plaintiff’s performance (see, e.g., 3A Corbin, Contracts, §§ 663, 665) and giving him the right to recover his down payment and the reasonable cost of a title search (see, e.g., McAndrew v Lanphear, 280 App Div 6, supra). Since defendant did not tender performance of the substitute proposals and demand that plaintiff proceed to close title, his mere statement or offer of substitute performance was insufficient to put plaintiff in default (Oppenheimer v Humphreys, 9 NYS 840, 841-842, affd 125 NY 733, supra; cf. Cohen v Kranz, 12 NY2d 242, 246, supra). We need not grapple with the academic question of whether actual performance of one or more of defendant’s proposals would have been adequate to fulfill his contractual obligation.
In sum, since defendant materially breached the contract of sale, he may not be awarded specific performance, and plaintiff is entitled to prevail in his action for return of the down payment. This result flows from the provisions which the parties included in their compact.
The order of the Appellate Division should be reversed, with costs, and the judgment of the Supreme Court, Nassau County reinstated. The certified question is answered in the negative.
Judges Jasen, Gabrielli, Jones, Wachtler and Fuchsberg concur with Chief Judge Cooke.
Order reversed, etc.